IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **NOEL T. DEAN** | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-CV-00073 |
| | § | |
| **HARRIS COUNTY; CITY OF** | § | |
| **HOUSTON; MILLARD F. WATERS;** | § | |
| **and DARSHAN R. PHATAK** | § | |
| *Defendants.* | § | |

**AMENDED MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
HARRIS COUNTY ASSISTANT MEDICAL EXAMINER DR. DARSHAN PHATAK
IN HIS INDIVIDUAL CAPACITY**

Defendant Harris County Assistant Medical Examiner Dr. Darshan Phatak in his Individual Capacity ("Dr. Phatak") now files his Amended Motion for Summary Judgment ("the Motion") pursuant to Rule 56, FED. R. CIV. P., and would respectfully show this Court as follows:

**NATURE AND STAGE OF THIS PROCEEDING**

1. This civil rights lawsuit was filed on January 10, 2013 by Plaintiff Noel T. Dean ("Plaintiff"), who alleges that he was wrongfully indicted and tried for the murder of his wife, Shannon Dean. Plaintiff alleges that his causes of action arise from "…serious medical examiner and police officer misconduct, including fabrication and manipulation of evidence and commingling." See Plaintiff Noel Dean's Third Amended Complaint ("the Complaint"), DOC. 135, p. 1. Plaintiff alleges that after a three year period defending himself, the charge against him was dismissed mid-trial after the Harris County Institute for Forensic Sciences ("HCIFS") issued an amended autopsy report, changing the manner of Ms. Dean's death from "Homicide" to "Undetermined". See Complaint, DOC. 135, pp. 1 & 2. Plaintiff alleges that Dr. Phatak violated his Fourth Amendment right to be free from an unreasonable seizure and from malicious prosecution, his Fifth Amendment right to due process of law and right to be free from a criminal prosecution allegedly instituted with and based on falsified evidence, and his Sixth Amendment

1

right to be free from an unfair trial based on falsified inculpatory evidence and suppressed exculpatory evidence. See DOC. 135, p. 24. In the caption to Count II of the Complaint, Plaintiff also alleges that this conduct violated the Fourteenth Amendment. See DOC. 135, p. 22. Plaintiff seeks compensatory and punitive damages against Dr. Phatak, individually, as well as costs, pre and post judgment interest, and attorneys' fees. See Complaint, DOC. 135, p. 28.

2. Dr. Phatak denies that he violated Plaintiff's constitutional rights in any way, or that he is liable to Plaintiff in any amount, under any theory. Dr. Phatak asserts that his classification of the manner of Shannon Dean's death as "homicide" constituted his medical opinion. Dr. Phatak is entitled to qualified immunity on all of Plaintiff's claims, and seeks a judgment that Plaintiff take nothing against him.

3. This case is set for docket call on July 22, 2016.

### THE SUMMARY JUDGMENT STANDARD

4. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), FED. R. CIV. P.; Celotex Corp. v Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); Boze v. Branstetter, 912 F.2d 801, 804 (5th Cir. 1990). Material facts are those facts that "might affect the outcome of the suit under the governing law." Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The facts are to be reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998)(citing Anderson, 477 U.S. at 255). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." Laughlin v. Olszewski, 102 F.3d 190, 193 (5th Cir. 1996).

5. The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the evidence in the record would not permit the nonmovant to carry its burden of proof at trial. Smith, Id., 158 F.3d at 911. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. Morris, Id., 144 F.3d at 380.

### PLAINTIFF'S CLAIMS AGAINST DR. PHATAK

6. Plaintiff makes the following claims against Dr. Phatak:

a. Plaintiff alleges that Dr. Phatak, intentionally or with deliberate indifference, performed a "partial and un-neutral autopsy, done hand-in-hand with [co-Defendant] Waters." See DOC. 135, p. 15.

b. Plaintiff alleges that Dr. Phatak intentionally and improperly eliminated a manner-of-death classification, falsified the autopsy report and failed to perform a side-by-side gun-to wound comparison. See DOC. 135, pp. 15 & 22.

c. Plaintiff alleges that Dr. Phatak's intentional and/or deliberately indifferent conduct violated his Fourth Amendment right to be free from an unreasonable seizure and from malicious prosecution, his Fifth Amendment right to due process, and to be free from a criminal prosecution instituted with falsified evidence and his Sixth Amendment right to be free from an unfair trial based on falsified inculpatory evidence and suppressed exculpatory evidence. See DOC. 135, p. 22.

### THE SUMMARY JUDGMENT EVIDENCE

7. Attached hereto as *Exhibits "1", "2", "3", "4", "5" and "6"* respectively, and incorporated by reference for all purposes herein are the following: the Affidavit of Dr. Darshan Phatak *("Phatak Affidavit")*; the Affidavit of Dr. Vincent Di Maio *("Di Maio Affidavit")*; Excerpts from the Deposition of Plaintiff's Expert Dr. Joye Carter (*"Carter Dep. Excerpts"*); the Affidavit of Marris Beavers, Custodian of Records of the Harris County Institute of Forensic Sciences *("Beavers Affidavit");* the Affidavit of Dr. Dwayne Wolf *("Wolf Affidavit")*; and the Affidavit of Dr. Luis Sanchez (*"Sanchez Affidavit").*

**ARGUMENT AND AUTHORITIES**

A.    **SECTION 1983 GENERALLY**

8.    Plaintiff sues Dr. Phatak, an assistant medical examiner, under Section 1983, the civil rights statute. To prevail on a section 1983 claim, Plaintiff must prove that Dr. Phatak, acting under color of law, deprived him of a right secured by the Constitution or laws of the United States. Blessing v. Freestone, 520 U.S. 329, 340 (1997); Daniels v. Williams, 474 U.S. 327, 330 (1986); Augustine v. Doe, 740 F.2d 322, 324-25 (5th Cir. 1984). Plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); Fee v. Herndon, 900 F.2d 804, 807 (5th Cir.), cert. denied, 498 U.S. 908, 111 S. Ct. 279 (1990); Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986); Angel v. City of Fairfield, Tex., 793 F.2d 737, 739 (5th Cir. 1986); Elliott v. Perez, 751 F.2d 1472, 1482 (5th Cir. 1985).

9.    Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or was due to deliberate indifference, and was not the result of mere negligence. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994); Davidson v. Cannon, 474 U.S. 344, 348 (1986); Daniels, 474 U.S. at 328, Estelle v. Gamble, 429 U.S. 97, 105 (1976). The negligent deprivation of life, liberty or property is not a constitutional violation. Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995); Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992), cert. denied, 506 U.S. 973 (1992); Herrera v. Milsap, 862 F.2d 1157, 1160 (5th Cir. 1989); Simmons v. McElveen, 846 F.2d 337, 339 (5th Cir. 1988).

10.   To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994); see also McClendon v. City of Columbia, 305 F.3d 314, 325 (5th Cir. 2002)(en banc). Deliberate indifference is a subjective standard of recklessness. McClendon, Id., 305 F. 3d at 326. To establish deliberate indifference, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir.

1998)(quoting Farmer, 511 U.S. at 837). The deliberate indifference standard is a high one. Actions by officials which are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and therefore do not divest the individual of qualified immunity. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 218 (5th Cir. 1998); Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996)(en banc); Conner v. Travis County, 209 F.3d 794, 796 (5th Cir. 2000.

B.   THE QUALIFIED IMMUNITY DEFENSE

11.   The doctrine of qualified immunity shields government officials from civil liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009), (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right". Reichle v. Howards, 566 U.S. ___, 132 S. Ct. 2088 (2012)(internal quotations marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory of constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074 (2011), citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

12.   In Al-Kidd, the Supreme Court noted, "We have repeatedly told courts...not to define clearly established law at a high level of generality." Al-Kidd, Id., at 742, 131 S. Ct. 2074. In its recent opinion in Mullenix v. Luna, ___ U.S. ___, 136 S. Ct. 305 (November 9, 2015), the Supreme Court quoted Al-Kidd: "The dispositive question is 'whether the violative nature of **particular** conduct is clearly established.'" See Al-Kidd, Id. (emphasis in Mullenix). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596 (2004)(per curiam)(quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151.

13.   "[A] constitutional right 'is clearly established if in light of pre-existing law the unlawfulness [is] apparent'" and "the unlawfulness of [the] alleged conduct is readily apparent from relevant precedent in sufficiently similar situations." Atteberry v. Nocona Gen. Hosp., 430

5

F.3d 245, 257 (5th Cir. 2005). "A right is clearly established when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right." Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F. 3d 404, 419 (5th Cir. 2008). Officials are not required "to anticipate subsequent legal developments" or "to 'know' that the law forbade conduct not previously identified as unlawful "if the law was not clearly established at the time the official acted." Morris v. Dearborne, 181 F.3d 657, 665 (5th Cir. 1999).

14. Once raised by the defendant, the plaintiff has the burden to overcome the bar of qualified immunity "by establishing that the official's allegedly wrongful conduct violated clearly established law". Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005); McClendon, Id., 305 F.3d at 325 ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.").

C. **DR. PHATAK IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CLAIMS**

   1. **THERE IS NO FREESTANDING CONSTITUTIONAL RIGHT TO BE FREE FROM MALICIOUS PROSECUTION**

15. Plaintiff alleges that Dr. Phatak intentionally, recklessly, or with deliberate indifference performed a biased autopsy of Shannon Dean, "un-separate" from HPD Detective Waters' ("Waters") investigation. See DOC. 135, p. 22. He further alleges that Dr. Phatak told Waters that he would not classify Shannon Dean's manner of death as "undetermined", even before he received all the forensic and toxicology results.[1] See DOC. 135, p. 22. Plaintiff contends that Dr. Phatak disregarded evidence that indicated that Shannon Dean committed suicide, including: "(1) a self-inflicted scar on Shannon's wrist from one of her two prior suicide attempts; (2) a letter written by Shannon Dean wherein she voiced her feelings of unworthiness, sinfulness, self-destruction, self-infliction of pain, and suicidal desire to end her life with the very gun that, in the end, she used; (3) an apology letter further describing her internal conflictions; and (4) admissions of prior suicide attempts to her church Elders. See DOC. 135, p.

---

[1] Dr. Phatak made this statement during a meeting on August 6, 2007. See *Phatak Affidavit, p. 11*. However, as Plaintiff's expert Dr. Carter, conceded, he could easily have changed his mind. See *Carter Dep. Excerpts, p. 219:13-220:12*.

6

23. Finally, Plaintiff alleges that Dr. Phatak failed to compare the gun to the wound or to photos of the wound, allegedly knowing that without a side-by-side gun-to-wound comparison, his conclusion could be wrong. See DOC. 135, p. 23.

16.   Plaintiff alleges that this conduct violated his constitutional right to be free from malicious prosecution. See DOC. 135, p. 24. That argument is foreclosed by the Fifth Circuit's decision in Castellano v. Fragozo, 352 F.3d 939, 058 (5th Cir. 2003)(en banc)(holding that "malicious prosecution" standing alone does not violate the Constitution).  Dr. Phatak is entitled to qualified immunity on this claim because Plaintiff has not alleged the violation of a clearly established constitutional right.

### 2.   DR. PHATAK IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FOURTH AMENDMENT CLAIMS

17.   Dr. Phatak is entitled to qualified immunity on Plaintiff's Fourth Amendment claims.  Plaintiff alleges that Dr. Phatak violated his Fourth Amendment right to be free from an unreasonable seizure.[2]  In the Court's Memorandum Opinion and Order dated September 17, 2013, the Court stated, "As of 2007, a reasonable medical examiner would have understood that intentional fabrication of evidence violated a defendant's right to be free of a wrongful prosecution that caused his pretrial arrest and other deprivations of liberty. Castellano, 352 F.3d at 953-54." DOC. 43, p. 12.  While understandable as a ruling on Dr. Phatak's Motion to Dismiss, Castellano's holding is inapplicable in the summary judgment context because the nature of Dr. Phatak's alleged conduct is wholly distinguishable from the type of conduct found in Castellano.

18.   Plaintiff alleges that Dr. Phatak falsified the autopsy report, by "falsely categorizing Shannon Dean's death as a 'homicide'". See DOC. 135, p. 23.

19.   First, it is undisputed that Dr. Phatak did not have the authority to classify a manner of death as "Homicide" on behalf of the HCIFS.  Rather, the classification of a manner

---

[2]   The summary judgment evidence establishes that Dr. Phatak did not have any personal involvement in the decision to prosecute Plaintiff.  Dr. Phatak did not make the decision to prosecute Plaintiff, nor did he participate in the decision to seek the filing of any criminal charge against Plaintiff. *Phatak Affidavit, pp. 15 & 16.*

of death as a "Homicide" at the HCIFS required the additional signature of either Dr. Sanchez or Dr. Wolf. See *Phatak Affidavit, pp. 11-13; Wolf Affidavit, pp. 12-13*. Dr. Wolf co-signed the Autopsy Report for Shannon Dean on September 11, 2007. See *Phatak Affidavit, p. 13 & Exhibit "F" attached thereto; see Wolf Affidavit, p. 13*.

20.     Even if Dr. Phatak had the authority to classify a manner of death as "Homicide", it is similarly undisputed that the classification constituted Dr. Phatak's medical opinion. See *Phatak Affidavit, p. 17; Di Maio Affidavit, p. 7*[3]. Crucially, even Plaintiff's expert, Dr. Joye Carter, agrees that the classification of Shannon Dean's death as a Homicide constituted Dr. Phatak's medical opinion, although she disagrees with that opinion. See *Carter Dep. Excerpts, 48:22-49:2; 58:18-22, 23 - 59:5; 103:24-104:12; 107:24-108:2*.

21.     The alleged premature "ruling out" of the "Undetermined" cause of death also does not constitute a falsification. First, as discussed above, this comment by Dr. Phatak constituted his medical opinion only, and one which could be changed. See *Carter Dep. Excerpts, 219:13-220:12*. The National Association of Medical Examiners ("NAME") has published "A Guide for Manner of Death Classifications" ("the Guide") in which it discussed the fact that death investigations are seldom, if ever, truly closed. Specifically, the Guide states: "Cases are seldom, if ever, truly 'closed' because the conclusions regarding manner of death may be changed (amended) anytime based on new relevant and material information." *Di Maio Affidavit, p. 8 and Exhibit "B" attached thereto*. In this case, the fact that Shannon Dean's autopsy report was ultimately amended to reflect "Undetermined" as the manner of death

---

[3]     The summary judgment evidence establishes that in regards to forensic autopsies, a forensic pathologist gives an opinion as to what he believes is the cause and manner of a death. This is based on medical knowledge, the circumstances leading up to and surrounding the death, an examination of the body (the autopsy) and laboratory tests, usually toxicology. Some or all of the findings may be used in determining a manner of death. As one proceeds with the case, one eliminates manners of death. *Di Maio Affidavit, p. 7*. The National Association of Medical Examiners published a document which discusses some of the general principles regarding certification of the manner of death. In "A Guide for Manner of Death Classification", the National Association of Medical Examiners states as follows: "In general, the certifier of death completes the cause-of-death section and attests that, to the best of the certifier's knowledge, the person stated died of the cause(s) and circumstances reported on the death certificate. It is important to remember that these 'facts' only represent the certifier's opinion and are not written in stone or legally binding. Information on the death certificate may be changed, if needed." *Di Maio Affidavit, p. 7 and Exhibit "B" attached thereto*.

demonstrates that Dr. Phatak's statement that the case would not be "Undetermined" was a reflection only of Dr. Phatak's opinion at that time, an opinion which was ultimately changed when additional analysis was performed by Dr. Wolf. See *Phatak Affidavit, p. 13; Wolf Affidavit, p.14*.

22. Plaintiff's allegation in support of his "falsification of the autopsy" theory that Dr. Phatak was unduly influenced by Detective Waters must also fail. Plaintiff's own expert, Dr. Carter, testified that law enforcement officers be present to add information and to observe what was being done in autopsy. See *Carter Dep. Excerpts, 131:25-132:9;* see also *Di Maio Affidavit, p. 7* ("It is not unusual for police officers to attend autopsies; in fact, it is encouraged. I know of no jurisdiction which forbids the attendance of a police officer…"). Detective Waters did not steer or influence Dr. Phatak's death investigation and results in any way. See *Phatak Affidavit, p. 14*. Dr. Phatak himself determined that the weapon had been held in the "handle up" position. See *Phatak Affidavit, p. 14*.

23. Dr. Phatak is entitled to qualified immunity on Plaintiff's Fourth Amendment claims. It was not clearly established in 2007 that giving his medical opinion with regard to the manner of Shannon Dean's death after investigation and review of the file by his supervisors would violate Plaintiff's constitutional rights. Plaintiff's Fourth Amendment claim is based on his allegation that Dr. Phatak falsified the autopsy report. See DOC. 135, p. 23. However, the summary judgment evidence establishes that the "manner of death" is an opinion issued by a medical examiner explaining how the cause of death arose. See *Wolf Affidavit, p. 8; Di Maio Affidavit, p. 7*. This evidence is even supported by the Plaintiff's own expert, who repeatedly agreed during her deposition that "Homicide" as a manner of death was Dr. Phatak's opinion, and that forensic pathologists could disagree about a particular manner of death. See *Carter Dep. Excerpts, p. 57:23-58-5; 58:18-22; 83:14-84:5*. Medical examiner practice is the practice of medicine. Diagnostic conclusions in medicine are reached through a complex assessment of objective findings (*e.g.* laboratory analysis, physical examination, autopsy findings and scene

findings) measured, evaluated and interpreted in the context of history and circumstances. See *Wolf Affidavit, p. 10.*

24.     It is undisputed that Dr. Phatak had no personal involvement in the decision to prosecute Plaintiff. He did not make the decision to prosecute him, nor did he participate in the decision to seek the filing of any criminal charge or charges against Plaintiff. He did not secure, seek to secure, or participate in securing a warrant for the arrest of Noel Dean in connection with the August 29, 2007 warrant for his arrest. Dr. Phatak did not appear before, testify before or communicate with any Harris County grand jury or grand juror in connection with Plaintiff's indictment. See *Phatak Affidavit, pp. 15 & 16.* Thus, there is no evidence that Dr. Phatak initiated or procured his prosecution or actively sought his indictment.

25.     At Paragraph 107 of the Complaint, Plaintiff alleges that Dr. Phatak disregarded the "abundant evidence" which pointed to suicide as a manner of death. Specifically, Plaintiff alleges that Dr. Phatak disregarded (1) a self-inflicted scar on Shannon's wrist from a prior suicide attempt; (2) a letter written by Shannon in which she voiced her feelings of unworthiness, sinfulness, self-destruction, self-infliction of pain, and suicidal desire to end her life; (3) an apology letter further describing her internal conflicts; and (4) admissions of prior suicide attempts to her church Elders. See DOC. 135, p. 23. However, the summary judgment evidence establishes that Dr. Phatak learned at the case review conference, before performing the autopsy, that this was a possible suicide. See *Phatak Affidavit, pp 4 & 11.* During the autopsy, Dr. Phatak looked at Shannon Dean's wrists for evidence of any prior suicide attempts. Though he did observe a hyper-pigmented scar on the forearm of Shannon Dean's left arm and incised that scar to determine its age, Dr. Phatak did not interpret this scar as a hesitation mark after that process. Dr. Phatak's opinion was that the scar was not a deep cut, but rather was a superficial wound. Detective Waters had told him of the presence of the scar, but did not tell him that Noel Dean alleged it came from a suicide attempt by Shannon Dean. See *Phatak Affidavit, pp. 8-9.* Thus, Dr. Phatak did examine the scar on Shannon Dean's forearm but did not interpret it as a hesitation mark.

26.     The summary judgment evidence establishes that at the time he classified the manner of Shannon Dean's death as homicide, (a classification approved by both Dr. Sanchez and Dr. Wolf, and discussed in the case review conference), Dr. Phatak knew that a writing about suicidal ideation was found on Shannon's PDA.  Dr. Phatak reviewed that writing, as well as a letter which he believes came from a pastor or former youth counselor of Shannon with regard to his belief that she did not commit suicide.  See *Phatak Affidavit, pp. 14 & 15 & Exhibit "4", pp. 255-257*.  Detective Waters did inform Dr. Phatak that there was an elder who had advised the HPD detectives that he was aware of some counseling of Shannon Dean.  However, Detective Waters did not advise Dr. Phatak that the elder stated the counseling was in regard to suicide.  See *Phatak Affidavit, p. 13*.  Dr. Phatak requested information about Shannon Dean's medical or psychiatric history, but did not receive any.  See *Phatak Affidavit, p. 15*.  There is no evidence that Dr. Phatak ever learned about or was provided with an apology letter further describing Shannon's "internal conflictions".

27.     When Dr. Phatak conducted the autopsy of Shannon Dean, he clearly recognized the entrance gunshot wound as a contact entrance wound.  He interpreted that contact entrance wound such that the pattern of the muzzle imprint indicated that the handle was up, rather than down.  After that, one of the key things that Dr. Phatak looked for was the statement of Noel Dean regarding the position of the gun when Shannon Dean reportedly shot herself.  In Noel Dean's statements, he indicated that the gun was in the position with the handle down (the right side up position).  Dr. Phatak found that to be a big discrepancy.  That was the single most important factor as to why Dr. Phatak classified the manner of Shannon Dean's death as a homicide.  See *Wolf Affidavit, p. 13*.  The position of the gun was misinterpreted not just by Dr. Phatak, but by Dr. Sanchez, Dr. Wolf, and by Plaintiff's expert witness during his first criminal trial, Dr. Joye Carter.  See *Wolf Affidavit, p. 14*.  There was no requirement that Dr. Phatak make a gun to wound comparison as Dr. Wolf did when preparing to testify.  See *Sanchez Affidavit, pp. 10-11*.

28.     These facts are marked contrast to the facts in Castellano, and Castellano did not give Dr. Phatak fair notice that giving his medical opinion as to the manner of Shannon Dean's death after the autopsy and death investigation would violate Plaintiff's Fourth Amendment rights. In his civil suit, Castellano relied on findings of falsification of evidence which had been issued by the Texas Court of Criminal Appeals.  Specifically, the Court had found that Defendant Fragozo had assisted Maria Sanchez in physically altering tape recordings offered into evidence at his criminal trial.  See Castellano, Id., 352 at 944.  There was also a finding by the Texas Court of Criminal Appeals that the tapes were altered to make it appear that Castellano was admitting to the crime of arson when, in fact, he had no knowledge of its commission.  See Castellano, Id., 352 F.3d at 944.  Here, there is no such evidence.  To the contrary, the evidence is that Dr. Phatak misinterpreted the patterned injury on Shannon Dean's head and the position of the gun, a misinterpretation also made by Dr. Sanchez, Dr. Wolf, and Plaintiff's own criminal trial expert, Dr. Joye Carter.  See *Wolf Affidavit, p. 14*.[4] There is no evidence that Dr. Phatak falsified the autopsy report of Shannon Dean; there is only evidence that he rendered his medical opinion. Dr. Carter, Plaintiff's own expert in this case testified that she made no such statement that the autopsy report was falsified.  See *Exhibit "3", pp. 221-222 (Dr. Carter testified that she would not use the word "falsified" to describe Dr. Phatak's opinion as to the manner of death).* Dr. Phatak is entitled to qualified immunity because the alleged constitutional violation was not clearly established in the specific context of this case.  See Mullinex.

### 3.     PLAINTIFF CANNOT ESTABLISH A CONSTITUTIONAL VIOLATION OF HIS RIGHT TO BE FREE FROM A CRIMINAL PROSECUTION BASED ON FALSIFIED EVIDENCE

29.     Plaintiff alleges in his Complaint that Dr. Phatak deprived him of his liberty interest in being free from a criminal prosecution instituted with and based on falsified evidence. Plaintiff apparently contends that the same alleged conduct by Dr. Phatak described above violates this constitutional right.

---

[4]     Plaintiff's own expert, Dr. Joye Carter, interpreted this opinion as being due to Dr. Phatak's inexperience as a pathologist. See *Carter Dep. Excerpts 73:15-74:5*.

30. In its Opinion, the Court based its denial of Dr. Phatak's qualified immunity defense asserted in his Motion to Dismiss on Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173 (1959)(reiterating that "a conviction obtained through use of false evidence, known to be such by representatives of the State" violates due process.) Although distinguishable from this case, in that the misconduct at issue in Napue was that of a prosecutor, and the Plaintiff in Napue had actually been convicted at trial, Dr. Phatak acknowledges that it is well settled that defendants have a constitutional right to be free of fabricated evidence in a criminal prosecution.

31. What was not well settled in July, 2007 was that an assistant medical examiner such as Dr. Phatak would violate Plaintiff's constitutional right to be free of fabricated evidence used in a criminal prosecution by conducting an autopsy and death investigation; examining scene photographs; reviewing toxicological testing of the decedent; reviewing gunshot residue testing of the hands of both the Plaintiff, who was a suspect, and of the decedent; conducting a re-creation with regard to the manner in which the weapon was allegedly held; examining photographs of the party which was held at the Dean residence the evening before Shannon Dean's death; reviewing the HPD incident report; requesting medical and/or psychiatric history of Shannon Dean; reviewing a document from Shannon Dean's PDA and a document from a minister; and rendering a medical opinion that the manner of Shannon Dean's death was homicide. Plaintiff's expert, Dr. Carter, testified repeatedly in her deposition that Dr. Phatak was rendering a medical opinion with regard to cause and a manner of death. See *Carter Dep. Excerpts, 48:22-49:2; 58:3-10, 18-22 & 23-59:9.*

32. To the extent, if any, that Plaintiff relies on Brown v. Miller, 519 F.3d 231 (5th Cir. 2008), that reliance is misplaced. Brown involved the claim of Dennis Patrick Brown, who was convicted of rape in 1984 and sentenced to life in prison. Twenty years later, DNA testing proved him innocent, and he was released. He sued the City of Covington, Louisiana, and several of its officers for their alleged misconduct in the investigation and prosecution of his case. See Brown, Id. 519 F.3d at 234. Among the other defendants, Brown sued Nace Jerry Miller, the laboratory technician who performed testing on samples of Brown's blood, hair and

saliva. Brown alleged that after receiving the results, Miller, either intentionally or in bad faith, failed to conduct additional commonly used tests that would have made the identification more specific and accurate, and likely excluded Brown as the donor, or alternatively, that Miller did conduct those tests, that those tests were conclusively exculpatory and that Miller concealed the exculpatory results. See Brown, 519 F.3d at 235. Miller filed a motion to dismiss on the ground of qualified immunity.

33. Brown alleged that Miller's laboratory report "had no scientific basis [and] grossly overstated the results of [the ] laboratory results, and violated standard procedures for analyzing blood-semen stains, thus creating a "misleading and materially inaccurate inculpatory serology report" when Miller knew he should have reported that the results were inconclusive. See Brown, Id., 519 F. 3d at 237. In the motion to dismiss context, the Fifth Circuit held: "We therefore hold that the deliberate or knowing creation of a misleading and scientifically inaccurate serology report amounts to a violation of a defendant's due process rights." See Brown, Id., 519 F.3d at 237.

34. Brown does not apply to this case. First, there is no evidence that Dr. Phatak created a misleading and materially inaccurate inculpatory autopsy report, nor is there any evidence of deliberate indifference. The evidence establishes that Dr. Phatak, after conducting an autopsy and a death investigation, formed a medical opinion that the manner of Shannon Dean's death was homicide. See *Phatak Affidavit, generally.* Dr. Wolf agreed with this opinion, and countersigned the Autopsy Report. See *Wolf Affidavit, p.13.* Dr. Phatak also took into account the possibility that Shannon Dean had committed suicide and examined the weapon which was used. See *Di Maio Affidavit, p. 9.*

35. The cooperative work of a medical examiner such as Dr. Phatak should be contrasted with the work of the crime laboratory analyst. Crime laboratory analysis, including DNA, toxicology, drug chemistry, gunshot residue, and trace evidence, is largely an objective measurement of a physical item(s) of evidence. The result (quantity or quality) is a quantum statement, largely derived independently of historical or investigative information. In contrast,

14

medical examiner practice is the practice of medicine, in which diagnostic conclusions are reached through a complex assessment of objective findings, such as laboratory analysis, physical examination, autopsy findings and scene findings, measured, evaluated and interpreted in the context of history and circumstances, obtained through the investigation in forensic practice. The diagnostic process involves development of a series of plausible interpretations of objective data with historical information, *i.e.,* development of a "differential diagnosis". See *Wolf Affidavit, p. 10.*

36.  Because medical examiner practice is the practice of medicine, and because of the sharp contrast between the work of a laboratory analyst and the work of a medical examiner such as Dr. Phatak, Brown does not apply to this case.  Again, there is no evidence that Dr. Phatak falsified the autopsy report, in any event.  See *Phatak Affidavit, generally; Wolf Affidavit; see Carter Dep. Excerpts, p. 73:15-74:5* (Dr. Carter would not use the word "false). *Carter Dep. Excerpts, p. 221:24-222:5.* Thus, it was not clearly established in the factual context of this case that this case that this conduct would violate Plaintiff's constitutional rights.

### 4. Dr. Phatak is Entitled to Qualified Immunity on Plaintiff's Brady Claim

37.  Plaintiff alleges that Dr. Phatak fabricated inculpatory evidence and suppressed exculpatory evidence, therefore depriving him of his Sixth Amendment right to a fair trial.  See Doc. 135 at p. 22. Plaintiff's allegation assumes that Dr. Phatak has a Brady obligation.  Counsel for Dr. Phatak has been unable to locate any authority in the Fifth Circuit which stands for the proposition that an assistant medical examiner has a Brady or a Brady derived obligation.

38.  By its own terms, the obligation set forth in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) applies to prosecutors. In Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the Supreme Court reiterated that Brady's disclosure obligation was the "responsibility of the prosecutor". See Giglio, Id., 405 U.S. at 154. In Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), the Supreme Court held that the Brady disclosure obligation extends to exculpatory evidence known only to

police officers, but that the responsibility for obtaining and disclosing such evidence remains the duty of the prosecutor. See Kyles, 514 U.S. at 437-38. In its Opinion, this Court cited Luna v. Beto, 391 F.2d 329, 332 (5th Cir. 1967), which held that the concealment of exculpatory evidence by police officers was a constitutional violation, consistent with Brady. The Court also cited Brown in its Opinion. See DOC. 43, p. 14. However, as discussed above, the holding set out in Brown addresses the alleged conduct of a state crime lab technician, which is completely inapplicable to Dr. Phatak, who was rendering a medical opinion only. Plaintiff cannot establish that Dr. Phatak violated his Brady obligations as that does not apply to him. Alternatively, in 2007, it was not clearly established that Dr. Phatak had a Brady obligation.

39. Even if Dr. Phatak had a Brady derived obligation, there is still no evidence of a constitutional violation of Plaintiff's Sixth Amendment rights. It appears that Plaintiff argues that Dr. Phatak suppressed exculpatory evidence by misinterpreting the pattern injury he found on Shannon Dean during autopsy. It is undisputed that as Dr. Wolf prepared to testify in Noel Dean's second trial, he created overlay photographs which led to a reinterpretation of the pattern injury. See *Wolf Affidavit, pp. 13 & 14*. The summary judgment evidence establishes that Dr. Phatak's original interpretation of the injury was a misinterpretation. However, the summary judgment evidence establishes that a number of board certified forensic pathologists had previously looked at this case, including Dr. Wolf and Plaintiff's own expert, Dr. Joye Carter, who did not question the position of the weapon, nor did she put together the overlay photographs as Dr. Wolf did. See *Wolf Affidavit, p. 14*. This reinterpretation was disclosed to the prosecutors from the Harris County District Attorney's Office. It is undisputed that the reinterpretation led to the amendment of the manner of Shannon Dean's death, from "Homicide" to "Undetermined". See *Wolf Affidavit, p. 15*. However, Dr. Phatak's original interpretation of the pattern injury does not amount to the suppression of exculpatory evidence under Brady, even if Brady applied to an assistant medical examiner, because it was based on his medical opinion.

40. Dr. Phatak did not violate Plaintiff's Sixth Amendment fair trial rights, either by falsifying inculpatory evidence or by suppressing exculpatory evidence. There is no evidence genuine issue of material fact and Dr. Phatak is entitled to judgment as a matter of law.

### 5. DR. PHATAK IS ENTITLED AS A MATTER OF LAW ON PLAINTIFF'S FIFTH AMENDMENT CLAIMS

41. Plaintiff alleges that Dr. Phatak violated his Fifth Amendment right to due process. As to this claim, Plaintiff has failed to state a claim upon which relief can be granted.

42. The protections of the Fifth Amendment due process clause apply only to "actions of the federal government" or federal actors. They do not apply to state and local governments or state and local government actors. See Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996); Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000). Thus, Dr. Phatak is entitled to judgment as a matter of law on this claim.

WHEREFORE, PREMISES CONSIDERED, Defendant Harris County Assistant Medical Examiner Dr. Darshan Phatak in his Individual Capacity respectfully requests that his Motion for Summary Judgment be, in all respects, granted, and for such other and further relief to which he shall show himself entitled.

Respectfully submitted,

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

/S/ Mary E. Baker
MARY E. BAKER
Senior Assistant County Attorney
Federal I.D. No. 7647
State Bar No. 08534000
1019 Congress, 15th Floor
Houston, Texas 77002
(713) 274-5133 (telephone)
(713) 755-8924 (facsimile)
mary.baker@cao.hctx.net

ATTORNEY FOR DEFENDANT
DR. DARSHAN R. PHATAK

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served on April ___, 2016, in compliance with the Federal Rules of Civil Procedure to all parties of record.

| | |
|---|---|
| Jerry Galow | Connica Lemond |
| Justin Studdard | Assistant City Attorney |
| Galow & Smith | City Attorney's Office |
| 1204 Nueces Street | 900 Bagby, 4th Floor |
| Austin, Texas 78701 | Houston, Texas 77001-0368 |

Lisa Hulsey
Senior Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

                                                    **/S/ Mary E. Baker**
                                                    MARY E. BAKER
                                                    Senior Assistant County Attorney