**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NOEL T. DEAN,** *Plaintiff,* | § § § | |
| **v.** | § | **CIVIL ACTION NO. 4:13-CV-73** |
| **HARRIS COUNTY, et al,** *Defendants.* | § § § | |

## Supplemental Briefing in Response to Court's Order

In accordance with the Court's order dated July 14, 2026 [Doc. 239] and because the evidence shows Dr. Phatak did not intentionally fabricate the autopsy report or any other evidence related to the underlying criminal investigation, indictment, or prosecution of the Plaintiff, and because the undisputed evidence further shows that none of Dr. Phatak's work or information Dr. Phatak provided was presented to or considered by the grand jury that indicted Plaintiff, Dr. Phatak is entitled to summary judgment dismissing Plaintiff's claims against Dr. Phatak individually for the following reasons summarized here.[1]

## Statement of Facts

At around 4:10 am on July 30, 2007, Houston Fire Department paramedics found Shannon Dean dead from a gunshot wound to the head.[2] Shannon's husband, Noel Dean,

[1] Understanding that the Court has requested a summary of the ample evidence demonstrating that Dr. Phatak did not commit a constitutional violation – because Dr. Phatak did not intentionally fabricate any evidence and that none of Dr. Phatak's work played in role in Plaintiff's indictment - and that any act Dr. Phatak may have taken did not violate the clearly established law **in 2007**, Dr. Phatak summarizes the same in this brief, but, consistent with Rule 10, F.R.C.P., incorporates the briefing and evidence in Docket Nos. as his complete response rather than restating all such evidence and briefing in this submission.

[2] Doc. 163-13 at pg. 2.

was arrested and charged with Shannon's murder. Detective Waters was tasked with interviewing Dean with Sergeant Brooks participating.[3] Shannon's case was assigned to Dr. Phatak.[4] Dr. Phatak is a forensic pathologist and Assistant Medical Examiner at the Harris County Institute of Forensic Sciences ("IFS"), formerly known as the Harris County Medical Examiner's Office.[5]

As an assistant medical examiner, Dr. Phatak did not have authority to make a manner of death determination.[6] Accordingly, **Dr. Phatak never ruled the death a homicide or a suicide**. Rather, Dr. Phatak was permitted to *recommend* a manner of death classification, but Dr. Phatak's superiors, Dr. Luis Sanchez, the Chief Medical Examiner, and Dr. Dwayne Wolf, the Deputy Chief Medical Examiner, made the determination of manner of death.[7]

Dr. Phatak conducted an autopsy on Shannon on July 31, 2007.[8] Detective Waters attended the autopsy.[9] Attendance at an autopsy by investigating officers is common in cases of a suspected homicide.[10] Dr. Phatak took samples of Shannon's blood, urine and vitreous fluid and had them tested for drugs and alcohol.[11] Dr. Phatak found an entry wound on the right side of Shannon's head.[12] He found a crescentile abrasion on Shannon's head

---

[3] Doc. 155-5 at pg. 51.
[4] Doc. 155-1 at ¶7.
[5] Doc. 155-1 at ¶¶ 5-6.
[6] Doc. 155-1 at ¶¶ 21-22.
[7] Doc. 155-1 at ¶24.
[8] Doc. 155-1 at ¶11.
[9] Doc. 155-1 at ¶11.
[10] Doc. 155-1 at ¶11.
[11] Doc. 155-1 at ¶¶29-31.
[12] Doc. 155-1 at ¶14.

at the 11 o'clock position and linear abrasions at the 4 and 5 o'clock positions.[13] Dr. Phatak did not find stippling on the wound, which indicated to him that the gun was in contact with Shannon's skin when it was fired.[14]

During the autopsy, Detective Waters did not tell Dr. Phatak about Dean's statement that Shannon had previously attempted suicide.[15] Dr. Phatak, however, observed a scar on Shannon's left forearm.[16] Dr. Phatak made an incision into the scar to determine whether there was fresh hemorrhaging that might assist him in determining the age of the scar.[17] There was no hemorrhaging and, thus, no way for Dr. Phatak to ascertain the age of the scar.[18] The scar was confined to the skin and did not extend to the subcutaneous fat.[19] This indicated to Dr. Phatak that the scar was superficial and was not a hesitation mark from a suicide attempt.[20]

Following the autopsy, Dr. Phatak prepared a cause of death sheet that temporarily designated the manner of death as "pending investigation," and he submitted the sheet to the IFS control desk.[21] Because Dr. Phatak was not authorized to assign a manner of death, several physicians at the IFS reviewed Shannon's autopsy at a case review conference held

[13] Doc. 155-1 at ¶14.
[14] Doc. 155-1 at ¶14.
[15] Doc. 155-1 at ¶16.
[16] Doc. 155-1 at ¶16.
[17] Doc. 155-1 at ¶16.
[18] Doc. 155-1 at ¶16.
[19] Doc. 155-1 at ¶16.
[20] Doc. 155-1 at ¶16.
[21] Doc. 155-1 at ¶17.

the following day.[22] All physicians at the case review conference agreed with the "pending investigation" designation.[23]

On August 6, 2007, Dr. Phatak attended a meeting with Detective Waters, Sgt. Brooks, Dr. Davis, and Dr. Sanchez.[24] Detective Waters and Sgt. Brooks brought the gun to the meeting and informed Dr. Phatak of Dean's repeated statements to investigators that Shannon held the gun in a handle down position.[25] Dr. Phatak examined the gun and observed the position of the sight and the ejector rod on the gun.[26] Based on his examination of the gun, Dr. Phatak believed the crescentile abrasion at 11 o'clock and linear abrasions at the 4 and 5 o'clock positions on Shannon's head were consistent with the gun being held in a handle up position, not the handle down position reported by Dean.[27]

At the conclusion of the meeting, Dr. Sanchez and Dr. Phatak decided to keep the manner of death designated as pending until they reviewed toxicology and gunshot residue tests and obtained and reviewed any psychiatric history for Shannon.[28] Dr. Phatak reviewed the portions of Dean's videotaped interview where Dean, contrary to Dr. Phatak's findings, stated Shannon held the gun in a handle down position.[29] Dr. Phatak also received and reviewed Shannon's toxicology results. The results indicated Shannon was extremely intoxicated at the time of her death with high levels of alcohol in her blood (.15 g/dL), urine

---

[22] Doc. 155-1 at ¶19.
[23] Doc. 155-1 at ¶19.
[24] Doc. 155-1 at ¶20.
[25] Doc. 155-1 at ¶20.
[26] Doc. 155-1 at ¶20.
[27] Doc. 155-1 at ¶20.
[28] Doc. 155-1 at ¶20.
[29] Doc. 155-1 at ¶22.

(.17 g/dL), and vitreous fluid (.19 g/DL).[30] Dr. Phatak also reviewed a letter from Darrell Hodnot, a pastor or youth counselor at Shannon's church in Los Angeles, California who knew Shannon.[31] Mr. Hodnot opined that Shannon was not suicidal.[32]

Dr. Phatak did not receive any psychiatric history corroborating Dean's report that Shannon had ever attempted suicide, let alone twice.[33] Dr. Phatak reviewed a document taken from Shannon's phone in which she expressed suicidal thoughts, but it did not change his opinion on the issue of suicidality.[34] Based on all the data, Dr. Phatak *recommended* designating Shannon's manner of death as homicide. After an independent review of the evidence, Dr. Sanchez approved and adopted Dr. Phatak's mere recommendation on August 27, 2007.[35] Since Dr. Phatak was not authorized to make a final determination of a manner of death,[36] Dr. Wolf's approval and agreement was necessary to a final determination.[37] Dr. Phatak and Dr. Wolf both signed the autopsy report designating the manner of death as homicide.[38]

Dean was indicted by a Harris County grand jury for murder. Significant to the complete lack of evidence of causation, Dr. Phatak did not communicate in any way, including not submitting any information or documentation to any prosecutor before the

---

[30] Doc. 155-1 at ¶13.
[31] Doc. 155-1 at pgs. 49-51.
[32] Doc. 155-1 at pgs. 49-51.
[33] Doc. 155-1 at ¶31.
[34] Doc. 155-1 at ¶31.
[35] Doc. 155-1 at ¶24.
[36] Doc. 155-1 at ¶¶ 21-22.
[37] Doc. 155-1 at ¶24.
[38] Doc. 155-1 at ¶24.

grand jury proceeding and Dr. Phatak did not appear before the grand jury.[39,40] Accordingly, the evidence is clear that Plaintiff's indictment was not caused by or related to any act or action by Dr. Phatak. Regardless of the accuracy of the autopsy report, since it was not presented to the grand jury, it could not have been a cause of Plaintiff's indictment.

Dean was subsequently tried for murder. His first trial ended in a mistrial. Dr. Wolf was to testify at Dean's second trial.[41] In preparing to testify, Dr. Wolf obtained a .40 caliber Smith and Wesson handgun similar to the make and model of the gun that killed Shannon.[42] Dr. Wolf had photos of the gun overlayed onto photos of Shannon's injury.[43] Forensic pathologists rarely prepare such overlays.[44]

Based on the overlay, Dr. Wolf opined the gun was held in the handle down position, and not the handle-up position.[45] Dr. Wolf shared his findings and medical opinion with Dr. Phatak, Dr. Sanchez, and one other physician at IFS.[46] All the physicians concurred with Dr. Wolf's opinion that the gun was held handle down.[47] IFS reclassified Shannon's manner of death from homicide to undetermined.[48] IFS notified the district attorney's office of the reclassification.[49] Later, the district attorney chose to dismiss the criminal case against Dean.

---

[39] Doc. 155-1 at ¶38-40.
[40] Affidavit of Luis Sanchez, Doc. 155-11 at ¶65.
[41] Doc. 155-6 at ¶55.
[42] Doc. 155-6 at ¶55
[43] Doc. 155-6 at ¶55
[44] Doc. 155-6 at ¶56.
[45] Doc. 155-6 at ¶¶55-56.
[46] Doc. 155-6 at ¶57.
[47] Doc. 155-6 at ¶57.
[48] Doc. 155-6 at ¶ ¶63-64.
[49] Doc. 155-6 at ¶ ¶63-64.

## Procedural Background

Dean sued Phatak under 42 U.S.C. § 1983, alleging that Phatak violated his rights under the Fourth, Sixth, and Fourteenth amendments by intentionally fabricating the autopsy report.[50] Asserting qualified immunity, Dr. Phatak moved for summary judgment.[51] This Court issued an order denying Dr. Phatak's motion.[52] In response, Dr. Phatak appealed the Court's order. On December 23, 2025, the Fifth Circuit vacated the Court's denial of summary judgment and remanded for the Court to determine whether a reasonable juror could conclude that Dr. Phatak intentionally misstated his findings *Dean v. Phatak*, 162 F.4th 555, 559 (5th Cir. 2025). On July 14, 2026, the Court ordered the parties to submit briefing to address the Fifth Circuit's mandate on remand.[53]

## Argument and Authorities

### A. The Fifth Circuit determined that Dean's fabrication claim could not proceed under a Fourth Amendment or *Brady v. Maryland* theory.

On appeal, the Fifth Circuit observed how "there are three distinct legal theories on which a fabrication claim [- like Dean's -] can rest." *Id.* at 564-65. First, the Fifth Circuit recognized how "the Supreme Court held in *Franks v. Delaware* that the Fourth Amendment prohibits officials from knowingly and intentionally, or with reckless disregard for the truth, including false information in a warrant affidavit." *Id.* at 565. Second, the Fifth Circuit acknowledged how it has "recognized a freestanding due process right not to have officials deliberately fabricate evidence[.]" *Id.* Third, the Fifth Circuit

[50] Doc. 135.
[51] Doc. 155.
[52] Doc. 226.
[53] Doc. 239.

highlighted how "some courts have held that an official who suppresses evidence of fabrication violates *Brady v. Maryland*." *Id.*

The Fifth Circuit rejected "Dean's Fourth Amendment fabrication theory[,]" and determined that "Dean's Brady claim fails as a matter of law because he identifi[ed] no evidence that Dr. Phatak actually suppressed." *Id.* at 565-69. However, the Fifth Circuit did not foreclose Dean's freestanding due-process fabrication theory. Rather, it determined that "Dean's fabrication claim may proceed under a freestanding due-process theory" only if "the record evidence permits a finding that Dr. Phatak knowingly misstated his conclusion, rather than merely reached a mistaken one." *Id.* at 570. Specifically, the circuit court instructed that "if the record fails of facts upon which a reasonable jury could conclude that Dr. Phatak **intentionally fabricated** the autopsy report, [this Court] should grant Dr. Phatak's motion for summary judgment" finding "he is entitled to qualified immunity." *Id.* at 561. Not only has there never been evidence of intentional fabrication of Dr. Phatak's *medical opinions,* the evidence, including undisputed evidence that Dr. Wolf, not Dr. Phatak, was the only person who was authorized to determine the manner of death and that Dr. Wolf did so, disproves Plaintiff's mere, still-unsupported, allegation. Furthermore, since the only evidence is that neither Dr. Phatak's medical opinions nor Dr. Phatak were presented to the grand jury that indicted Plaintiff and Plaintiff was never convicted, let alone based on anything from Dr. Phatak, Dr. Phatak cannot have been the cause-in-fact of any constitutional injury Plaintiff claims.

### B. Dr. Phatak is entitled to qualified immunity because the evidence disproves the mere allegation that Dr. Phatak intentionally fabricated the autopsy report.

"Qualified immunity is a two-step process." *Atkins v. Hopkins,* 137 F.4th 286, 289 (5th Cir. 2025). Courts "ask whether the defendant violated the plaintiff's constitutional rights" and "whether the right was clearly established." *Id.* (cleaned up). The only question for the Court is whether Dr. Phatak violated Dean's constitutional rights – "that is, [whether Dr. Phatak] affirmatively reported a conclusion he had not actually reached." *Phatak*, 162 F.4th at 559, 569. In other words, Dr. Phatak is "entitled to summary judgment on the basis of qualified immunity unless [Dean] can show triable issues as to whether [Dr. Phatak] violated a clearly established right[.]" *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017).

#### 1. Dean fails to identify any evidence showing Dr. Phatak intentionally fabricated anything.

Dean argues that "the clearly established right at issue here is the due process right to be free from fabricated evidence." *Id.* "The hallmark of such a claim is that officials created evidence that **they knew to be false**." *Phatak*, 162 F.4th at 564 (emphasis added). Accordingly, in light of Dr. Phatak's clear, positive, and direct testimony that he did not present any information he knew or had reason to believe was false, the Plaintiff's burden to avoid summary judgment has and continues to be to present evidence - not allegations or mischaracterizations of testimony from other witnesses none of whom have testified to Dr. Phatak's state of mind - from which a jury could find Dr. Phatak's state of mind in knowingly falsifying evidence. To be sure, and as the Court of Appeals has made clear, "[n]egligence, even gross negligence, is not sufficient to trigger liability." *Id.* at 567. Indeed, only "deliberate or knowing creation of misleading and [] inaccurate evidence

amounts to a violation of a defendant's due process rights," and so "the only question is whether [Dean has] provided competent summary judgment evidence sufficient to raise a question of fact for trial as to whether [Dr. Phatak] violated that clearly established right." *Brewer*, 860 F.3d at 824. This question is easily answered as there is no evidence that Dr. Phatak *intentionally* misstated any of his medical opinions.

**i. Dr. Carter's mere disagreement with Dr. Phatak's *opinion* does not demonstrate that Dr. Phatak intentionally fabricated the autopsy report.**

Dean points to the fact that his expert, Dr. Carter "would have changed the manner of death from homicide to suicide" and how she opined that Dr. Phatak "grossly deviated from the accepted standard of medical practice of forensic pathology[.]"[54] However, "[t]he disagreement voiced by [Dean's] expert is evidence that [Dr. Phatak was] mistaken in [his] conclusion or methodologies, but no more." *Brewer*, 860 F.3d at 825. Moreover, Plaintiff's assertion and testimony from Dr. Carter fails to reconcile the undisputed evidence that Dr. Phatak did not have the authority to, and therefore Dr. Phatak did not, assign a manner of death or later change the manner of death. The undisputed evidence shows Dr. Wolf, not Dr. Phatak, had the authority to, and did, assign the manner of death and later changed it.

Most notably, for purposes of the Court's analysis consistent with the mandate from the Court of Appeals, Dr. Carter never offered any opinion that the autopsy report or any of the underlying data upon which the autopsy report was based was falsified or that Dr. Phatak knew of an inaccuracy in his medical opinions. Indeed, to the very contrary, in testifying that Dr. Phatak – again Dr. Carter does not reconcile her accusation against Dr. Phatak with

---

[54] Doc. 169 at ¶30; Doc. 169-4 at pgs. 2, 8.

the fact Dr. Phatak could not and did not assign manner of death - "grossly deviated from the accepted standard of medical practice of forensic pathology," Dr. Carter accuses Dr. Phatak of no more than negligence, or perhaps she would say gross negligence, but not that Dr. Phatak "created evidence that [he] knew to be false." *Phatak*, 162 F.4th at 564. The Court need look no further than the Fifth Circuit's most recent opinion in this very case, as well as the prior opinion vacating denial of Dr. Phatak's motion for summary judgment,[55] to recognize that Dr. Carter's testimony actually *supports* Dr. Phatak's entitlement to summary judgment because Dr. Carter's opinion stops at "negligence [or] even gross negligence, [neither of which] is [] sufficient to trigger liability." *Id.* at 567.

**ii. No evidence demonstrates that Detective Waters influenced Dr. Phatak's findings.**

Dean heavily relies on his no more than conclusory *allegation* – without identification of any supporting evidence - that Detective Waters influenced Phatak's medical opinions.[56] First, even if that were true, it is not evidence of knowing and intentional falsification of any reported finding. But the Court need not even reach that point because the evidence does not support the Plaintiff's mere allegation at all. Dean relies on two lines from Dr. Phatak's affidavit where Dr. Phatak states: (1) "At the autopsy, I was aware that Detective Waters believed that Noel Dean Killed his wife; and (2) My impression was that Detective Waters was hoping that we would discover that the weapon was held with the handle grip up, indicating a manner of death of homicide, but he had no way of knowing what the

---

[55] This is the second time the Court of Appeals had made clear that "[n]egligence, even gross negligence, is not sufficient" to deny summary judgment to Dr. Phatak. *Dean v. Phatak*, 911 F.3d 286, 290 (5th Cir. 2018).
[56] Doc. 169 at ¶28.

autopsy would show."[57] Not only are these statements of fact **completely devoid of any evidence of any influence on Dr. Phatak**, in improperly parsing these statements, the Plaintiff conveniently ignores the remainder of the same paragraph in which Dr. Phatak explains how the presence of an officer is not unusual when there is suspicion of a homicide, and how Detective Waters' belief about Shannon's manner of death "**did not influence [him] in any way**."[58] In the face of Dr. Phatak's clear and positive statement, it is inappropriate for the Plaintiff to assert to the very contrary *without identifying an evidentiary basis to do so.* Simply put, the **only evidence** as to this allegation[59] is that "Detective Waters' belief about Shannon's manner of death "did not influence [Dr. Phatak's medical opinions or report] in any way."

Essentially, Dean argues that Detective Waters' mere involvement influenced Dr. Phatak, but the Fifth Circuit in *Brewer* already rejected a similar argument. *Brewer*, 860 F.3d at 825. There, the plaintiffs "contend[ed] that a reasonable jury could find that defendants were incentivized to fabricate by the inherent pressures forensic analysts face from the State." *Id.* The *Brewer* court, however, held that summary judgment was appropriate because, just as here, the plaintiffs "failed to raise a genuine issue of fact as to whether the defendants violated their right to due process by intentionally creating false [] evidence." *Id.* at 826. As did the *Brewer* court, the Court should find Dean's conclusory assertion insufficient to overcome Dr. Phatak's entitlement to summary judgment.

---

[57] Doc. 169 at ¶27; Doc. 155-1 at ¶11; see also Doc. 155 at ¶22.
[58] Doc. 155-1 at ¶11.
[59] As the Court will recall, the Circuit Court's first vacatur of the Court's denial of Dr. Phatak's motion for summary judgment, in *Dean v. Phatak*, 911 F.3d 286(5th Cir. 2018), expressly directed that the Court consider the motion based only evidence and to, consistent with Rule 56(c), ignore unsupported allegations such as this one.

### iii. Dean mischaracterizes the evidence to remedy the glaring issue that the record fails to show Dr. Phatak intentionally fabricated the autopsy report.

Throughout this case, Dean's strategy has been to make claims unmoored from the facts. For starters, Dean misconstrues Dr. Wolf's testimony to inaccurately make the mere *allegation* that "[Dr.] Phatak knew that without a side-by-side, gun-to-wound comparison interpreting the position of the gun his autopsy could be false, misleading, and inaccurate."[60] But that is not at all what Dr. Wolf's testimony says:

Q. Okay. Do you have any idea why it is that Dr. Phatak got the position of the gun essentially 180 degrees wrong?
A. Same reason that Dr. Sanchez did, I did and Dr. Carter did.
Q. How do you mean?
A. It's a pattern injury and until you look at the end of the gun side by side with that wound, it's really hard to tell. You can tell that it's a pattern injury, but I can see how it could be interpreted either way.
Q. Okay. Did Dr. Phatak have access to the actual gun at the time of the autopsy?
A. Not at the time of the autopsy.
Q. Did he have access to the actual gun at some point before he made his declaration of homicide?
A. As I understand, he did.

Again, in testifying that Dr. Wolf could "see how [the position of the gun ] could be interpreted either way," Dr. Wolf's testimony proves Dr. Phatak's medical opinion of the position of the gun was perhaps not even negligent, but if so, no more than negligent. Lest there be any doubt, Dr. Wolf testified that Dr. Phatak's error was the same mistake Drs. Sanchez, Carter, and Wolf all made.[61] Not only does Plaintiff fail to reconcile Dr. Wolf's – and other doctors' - admission of the very same error Plaintiff conclusorily labels as

[60] Doc. 169 at ¶25; 169-2 at pg. 19: 13-19.
[61] Further demonstrating no more than mere negligence, if even that, Dr. Wolf testified that determining the position of the gun was "really hard to tell."

falsification only as to Dr. Phatak, despite the undisputed evidence that Dr. Wolf, not Dr. Phatak, was authorized to and did determine the manner of death, but this evidence fails to demonstrate anything regarding Dr. Phatak's knowledge or intent. *Assuming arguendo* that this evidence could be imputed to Dr. Phatak, his decision not to conduct a side-by-side comparison does not show he intentionally falsified a finding, but only shows, "[a]t most, [] evidence that [Dr. Phatak] was negligent in failing to perform [the side-by-side comparison]." *Brewer,* 860 F.3d at 826.

Dean also claimed that "Dr. Phatak [] falsely testified that a scar on Shannon's wrist [] was not a self-inflicted wound."[62] But, again, Dean cites to Dr. Wolf's testimony:[63]

Q. Do you agree there's evidence that at one
point she cut her wrist?
A. That's what I've been told, and there's a scar
on her wrist that would be consistent with that.

Dr. Phatak, on the other hand, concluded that the scar was not a hesitation mark *indicative of a suicide attempt*.[64] That is a question, obvious from the transcript itself, Plaintiff's counsel did not even ask Dr. Wolf. Dr. Wolf agreed *only* that a scar on Ms. Dean's wrist was consistent with a report that Ms. Dean had "cut her wrist."[65] But that is not a question of whether the scar indicated a prior suicide attempt, a possibility Dr. Phatak opined was unlikely because Dr. Phatak, unlike Dr. Wolf, did medical testing that revealed Shannon's cut was not a deep cut, but a superficial wound.[66] Furthermore, Plaintiff has failed to

---

[62] Doc. 169 at ¶26.
[63] Doc. 169 at ¶26; Doc. 169-2 at pg. 16: 4-7.
[64] Doc. 155-1 at ¶16 (Dr. Phatak explaining that hesitation marks show prior suicide attempts).
[65] Of course, the phrasing of Plaintiff's counsel question made no effort to equate the mere fact of a cut wrist with an attempted suicide, so Dr. Wolf's answer does no more than establish a known fact: a cut wrist, but nothing more.
[66] Doc. 155-1 at ¶16

present any *evidence* that the status of Shannon's previously cut wrist factored into Dr. Phatak's medical opinion of homicide, let alone Dr. Wolf's final decision to rule the manner of death as homicide.

**iv. The facts tending to show Shannon was suicidal, fail to show that Dr. Phatak intentionally fabricated the autopsy report.**

Dean claims "there was an abundance of evidence that pointed to suicide" including: (1) the wound and wound path were consistent with a self-inflicted wound; (2) the lab results regarding gunshot residue on Dean were inconclusive; (3) a self-inflicted scar on Shannon's wrist from a past suicide attempt; (4) a letter written by Shannon where she expressed a desire to end her life; (5) an apology letter describing her internal conflicts.[67] Notably, Dean primarily cites to Ms. Carter's report for this evidence. Ms. Carter used this evidence to explain that she would have changed the manner of death from homicide to suicide.[68] But as discussed *supra,* "[t]he disagreement voiced by [Dean's] expert is evidence that [Dr. Phatak was] mistaken in [his] conclusion or methodologies, but no more." *Brewer*, 860 F.3d at 825. Indeed, this undeniable fact is equally established by Dr. Wolf's deposition testimony, *supra.*

Presumably, Dean relies on this "suicidal evidence" to assert that Dr. Phatak knowingly fabricated his findings. Dean's illogical, and certainly unsupported, leap however is misplaced because "the qualified immunity standard gives ample room for mistaken judgments[,]" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000), and

---

[67] Doc. 169 at ¶29; Doc. 169-4 at pg. 8.
[68] Doc. 169-4 at pg. 8.

although at least one of Dr. Phatak's findings turned out to be incorrect, he based his findings on other grounds and simply made a mistake;[69] the same mistake, as Dr. Wolf testified, he and two other more senior pathologists made. As the Fifth Circuit has already cautioned, "medical examiners play an essential role in criminal investigations, and **their work warrants deference and breathing room**." *Phatak*, 162 F.4th at 568 (emphasis added). Since the question before the Court is whether Plaintiff can present evidence of knowing falsification of evidence and "[t]he Constitution does not demand an error-free investigation," the mere fact any of Dr. Phatak's findings turned out to be wrong does not even tend to show that he intentionally created false evidence. As the Fifth Circuit explained in *Brewer*, even if it could be argued Dr. Phatak should have given more weight to the "suicidal evidence," such a finding has no effect on the outcome of this case because it does "not lead to an inference of intentional fabrication." *Brewer*, 860 F.3d at 825. It would only show "that [Dr. Phatak was] negligent – perhaps grossly so – but no more." *Id.* at 826. This unsupported *argument* provides no support to Plaintiff's burden to present proof in the form of admissible *evidence* that Dr. Phatak intentionally created false evidence.

## CONCLUSION

Because the Court Ordered this analysis as a supplement to the previous briefing on the pending motion for summary judgment in light of the circuit court's remand, doctor product will not restate the additional defense of independent intermediary, in the form of

[69] Doc. 155-1 at ¶¶22, 29-31

the grand jury which indicted the plaintiff without any information or input from Dr. Phatak, but understands the court will consider that additional basis for summary judgment if the court finds evidence, as mandated by the Court of Appeals, from which a jury could find intentional falsification, the first question of the alleged constitutional violation that remains an issue in this case.

The answer to that question is simple. Dr. Phatak has presented clear, positive, and direct evidence demonstrating a lack of anything more than an error in medical judgment. He has expressly denied any knowing or intentional mistake, let alone falsification. Dr. Wolf's testimony completely supports Dr. Phatak's assertion that, at most, Dr. Phatak made an error in medical judgment. Indeed, Dr. Wolf points out that several other doctors, including himself, made the very same error in judgment Plaintiff labels – despite the evidence – as intentional falsification. Furthermore, to the extent that the Plaintiff complain of the report of manner of death in the autopsy report, the undisputed evidence shows the ultimate decision to assign homicide as the manner of death was Dr. Wolf's, not Dr. Phatak, since Dr. Wolf, and not Dr. Phatak had the authority to make, and actually made, that final determination. But that's not all. Plaintiff's own hired expert witness accuses Dr. Phatak of no more than gross negligence. In light of the two prior opinions in this case as well as additional Fifth Circuit controlling authority, that make clear that negligence, even gross negligence, is not sufficient to deny summary judgment, Dr. Carter's testimony supports Dr. Phatak's claim to summary judgment. Beyond this evidence, the Court remains presented with nothing more than mere allegations based on efforts to parse or mischaracterize testimony, just as it was when the Court first undertook to rule on the

motion. Despite the opportunity to do so after the first remand, Plaintiff failed to present anything more.

Accordingly, with the benefit of this summary and the evidence and briefing previously submitted, the Court should find that the Plaintiff has failed to present evidence to raise a fact question as to the seminal question of intentionality necessary to avoid summary judgment. However, even if the court finds, and identifies as required by the Circuit Court's mandate, evidence from which the Court finds a jury could find the necessary intentional falsification of evidence, the Court should still grant summary judgment based upon the independent intermediary doctrine and the undisputed evidence demonstrating a lack of causation between any conduct by Dr. Phatak and the Plaintiff being charged with a crime and based upon the fact that Plaintiff has not shown that Dr. Phatak' conduct violated clearly establish law in 2007.

Dated: September 2, 2026

Respectfully submitted,

*/s/ William S. Helfand*
William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
SDTX Fed. No. 8791
Lewis Brisbois Bisgaard & Smith, LLP
24 Greenway Plaza, Suite 1400
Houston, TX 77046
(832) 460-4614 (telephone)
(713) 759-6830 (facsimile)
Bill.Helfand@lewisbrisbois.com

**ATTORNEY FOR DEFENDANT**
**DR. DARSHAN R. PHATAK**

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on September 2, 2026, by filing this motion through the Court's ECF system, which will serve all counsel of record in compliance with the Court's ECF service requirements.

*/s/ William S. Helfand*
William S. Helfand